IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-02332-MS

LINDA R. WALKER,

       Plaintiff,

v.

JO ANNE B. BARNHART,
*Commissioner of Social Security,*

       Defendant.
_____

**MEMORANDUM OPINION AND ORDER**
_____

This matter comes before the Court for review of the final decision of the Commissioner denying Supplemental Social Security Income benefits to Linda R. Walker ( hereafter, Claimant). The Court has considered the briefs of the parties (**# 9**, **15**, and **16**), the administrative record **(#6)** and the oral arguments of counsel.

### I.  JURISDICTION

The Claimant filed her application for Supplemental Security Income pursuant to 42 U.S.C. §§1381-1383c on June 14, 2002.  Her application initially was denied, and she requested review.  After a hearing held on March 3, 2005, and Administrative Law Judge (hereafter, ALJ) issued a written opinion concluding that the Claimant was not disabled.  The Appeals Council determined that there was no basis for changing the decision.  The Claimant filed this case in a timely manner.  The Court therefore exercises jurisdiction pursuant to 42 U.S.C. §405(g).

## II.  ISSUES PRESENTED

The ALJ engaged in the standard five-step analytical process[1] finding that:

1) The Claimant had not engaged in substantial gainful activity after Jan.1, 2002.

2) The Claimant had severe impairments consisting of degenerative cervical and lumbar disc disease, major depressive disorder, personality disorder and cannabis abuse.

3) None of the impairments met or exceeded the criteria of the Listings found in Appendix 1, Subpart P, Regulations No. 4.

4) The Claimant had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, limited by back pain.  She can sit, stand and walk for 6 hours in an 8-hour day, with the use of a cane for walking.  She can occasionally use foot controls, climb ramps and stairs, and stoop.  She cannot climb ladders, ropes or scaffolds.  She can frequently reach, handle and finger, bilaterally.  She should avoid exposure to open machinery, heights, walking on rocky terrain and driving as part of work duties.  Mentally, she can perform work that can be learned by demonstration within 30 days.   With this RFC, the Claimant is unable to perform her past relevant work.

5) Although the Claimant cannot perform the full range of work, using Rule 202.21 as a framework of decision-making, there are a significant number of jobs in the national economy that she can perform - *e.g.* surveillance system monitor, counter clerk, cafeteria attendant, and officer helper. Therefore, the Claimant is not disabled.

The Claimant challenges only the findings made with regard to her RFC at Step 4 . The Claimant contends that the ALJ did not properly assess her credibility in light of her mental health

---

[1] See: 20 CFR 404.1520; *Bowen v. Yuckert*, 482 U.S. 137 (1987)

and did not give appropriate weight to the opinions of treating physicians. The Commissioner responds that there was no error and that the Claimant's RFC is supported by substantial evidence.

### III.  MATERIAL FACTS

The Claimant was born in 1957, has a high school education and alleges that she became disabled on January 1, 2002.  She claims that she became unable to work due to 1) physical problems of a bad back, leg and hip pain, left arm and wrist limitations; and 2) mental problems of depression, anxiety and psychotic symptoms.  Prior to her claimed disability, she worked as a cook, cashier, packer, certified nurse assistant (CNA), receptionist and maid.

The Claimant testified as to her impairments and history, but as noted by the ALJ and acknowledged by her counsel, certain aspects of the Claimant's testimony were internally inconsistent. With regard to her physical complaints, the Claimant stated that she took Vicodin and Percoset daily for pain. She described her daily level of back pain in her spine as ranging from 5 to 10 on a scale of 10, but on the day of the hearing she described it as level 8 without having taken medication, whereas when she takes medication, it was ordinarily at a level 10.  She described her level of hip pain as 6 without medication, but level 5 with it. She stated that she needs to shift position every few minutes. She drives a child to and from school, approximately 20-30 blocks each way, but otherwise spends the day sitting in her bedroom.  Although in response to questioning by the ALJ, she described her pain as only being in her back and hip, upon examination by her Counsel, she referred to her left arm as "dislocated and crushed"due to an injury to her wrist seven years previously. She associated no pain to this condition, and when asked why this wasn't mentioned earlier, stated that she "didn't understand".

She also testified that she stopped work in 2001, but later stated that she continued to work as a full-time CNA until October, 2003. She reported a history of learning problems and stated that she cannot read a newspaper, but testified that she completed all of the educational requirements to become a CNA. She complained of daily anxiety attacks, migraine headaches, having seen ghosts her entire life (and being choked by one) and hearing voices that told her to hurt herself. Despite claiming to have been involved in only one car accident in her life, she gave three different dates for accident:1995, November 2002, and February 2003. She testified that she had been hospitalized for psychiatric reasons in 2004, but her counsel was unable to locate or present any records to corroborate this statement. When asked about the inconsistencies in her testimony, the Claimant said that her memory was not good, that "half the time" she could not remember what had happened on the previous day, and sometimes she forgot that she had children.

### A. Evidence with regard to Physical Impairments

#### 1. Medical Treatment

Before 2003, the only medical records presented involved complaints of abdominal pain. In November 2001, the Claimant was diagnosed with uterine fibroids, anemia and low potassium. This diagnosis was repeated in January and February 2002, when the Claimant was seen in the emergency room for abdominal pain. She was also diagnosed as having peptic ulcers. Both conditions were treated with medication.

In February 2003, the Claimant came to the emergency room following an automobile accident, suffering from cervical, thoracic and lumbar strain. She received medication and was discharged in stable condition. Thereafter, she was treated by primary care physicians Drs. Alan Schackleford M.D. and Robert Fromcheck M.D. An MRI in April 2003, revealed a small cervical

disc protrusion and desiccation at L5-S1.  Physical examinations revealed a decreased range of motion and tenderness in the cervical, lumbar and thoracic spine.  The Claimant was diagnosed as having cervical, lumbar and thoracic sprain, post traumatic headaches, cervical/lumbar radiculopathy and sacroiliitis.  She was treated with pain medication, physical therapy and received recommendations for chiropractic care.  She was also referred to J. Trevor McNutt M.D. for a neuorological consultation.  He recommended home exercises and follow-up care with her primary physicians.

In May 2003, the Claimant again presented to the emergency room with abdominal pain.  This was attributed to gastroenteritis.  She was also diagnosed with rectal prolapse, mental health changes, a history of opiate abuse and ongoing polysubstance abuse.

By January 2004, Dr. Schackelford noted that pain medication injections were no longer effective in addressing Claimant's complaints of back and neck pain.  He again referred her to Dr. McNutt, and suggested a psychological evaluation, possible biofeedback and/or acupuncture.  In April of 2004, Dr. McNutt discharged the Claimant form his care.  He noted, that except for some tenderness over the left wrist, her physical examination was normal.

### 2. Physical Assessments

The earliest assessment was conducted by Dr. Rita Starrit M.D. in November, 2001 as a consultative examination.  Dr. Starrit assessed the Claimant's complaints about back, hip and leg pain, but found no significant physical limitations.  Dr. Starrit opined that the Claimant could perform light work and noted that depression was the Claimant's most limiting impairment. [2]

---

[2] The reviewing State agency physician, Dr. Alan Ketelhohn M.D., agreed in December 2001.

In February 2003, prior to the automobile accident, Edward Manring M.D. performed another consultative physical examination. He found the Claimant to be underweight and depressed, but noted no significant musculoskeletal complaints. He recommended that the Claimant be evaluated for disability by a psychiatrist and opined that, mentally, she was too dsyfunctional to perform productive work.

In June 2004, treating physician Robert Fromcheck M.D. completed a physical health assessment in which he opined that the Claimant could sometimes[3] grasp and finger, but could *never*[4] sit, stand, walk, push, pull, climb, balance or use her neck in stable or rotating positions. He opined that the Claimant was limited to sedentary work, would benefit from vocational rehabilitation and that her restrictions were permanent.

In August 2004, Terri Fox M.D. performed a consultative physical examination noting that the Claimant exhibited a stiff gait, limited range of motion and tenderness of cervical, thoracic and lumbar spine, decreased range of motion of the left wrist. Assessing the Claimant's complaints of low back and neck pain, left wrist injury, headaches, anxiety attacks and depression, Dr. Fox opined that the Claimant could lift and carry 10 pounds frequently; carry up to 20 pounds occasionally; sit one hour at a time, up to six hours total, and stand and /or walk up to two hours total, with the need to change from sitting to standing every 10 minutes. Dr. Fox also opined that the Claimant could frequently reach; occasionally handle, finger, feel, push and pull; frequently use her right foot and continuously use her left foot to operate controls; and occasionally climb, stoop, crouch, kneel, crawl and balance.

---

[3] According to the form, sometimes means up to 2 hours continuously and 6 hours occasionally.

[4] According to the form, *never* means less than 2 hours on a continuous basis and less than 6 hours on an occasional basis.

**B. Effect of Mental Impairments**

The parties agree that the Claimant suffers from mental impairments. However, the professionals who have examined and treated her have been unable to agree on a diagnosis.[5] The ALJ found her to suffer from a major depressive disorder, personality disorder and cannabis abuse, which he categorized as severe, but that these impairments did not equal or meet the requirements of any Listing. There is no challenge to these findings. Similarly, there is no challenge to the effect of these impairments upon the RFC.[6] The sole issue with regard to these

---

[5] Based almost entirely on her subjective complaints, the Claimant has been diagnosed as having impairments in six different categories of mental disorders including PTSD, major depression, panic with agoraphobia, bi-polar condition, a psychotic disorder, and cannabis use. According to the expert witness present at the hearing, some of the diagnoses are inconsistent, there is little evidence to support a psychotic condition. The records of her treating counselor as well as observations by consulting physicians note the possibility of malingering or factitious disorder.

[6] In the briefing, the Claimant contended that the ALJ failed to correctly account for her mental impairment in the RFC. However, at oral argument, this position was conceded.

> THE COURT: Now, let's go back to the mental health component here. I've not heard how you think the mental health component figures into the RFC?
> 
> MS. ROBINSON: Well, your Honor, I don't really so much dispute what the ALJ found in that regard. He found her able to do unskilled work only. That is a limitation. And in the ALJ's finding it would appear to stem from what he describes as a major depressive disorder and a personality disorder. If we're speaking of RFC, I really don't dispute that finding.
> 
> MS. ROBINSON: Your Honor, I simply believe that because the ALJ thought she was lying, he made an error in his determination of her credibility that colored his whole decision.
> 
> THE COURT: So in other words because he thought she was lying he underestimated her physical limitations? Is that it?
> 
> MS. ROBINSON: I do believe so, your Honor.
> 
> THE COURT: Okay. So other than that, the mental health component doesn't figure in; correct?
> 
> MS. ROBINSON: Not really.

impairments is their effect upon the ALJ's determination of the Claimant's credibility as to her physical complaints.

## IV. ANALYSIS

### A. Standard of Review

In reviewing the Commissioner's decision, this Court is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir 1994). In doing so, this Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Casias v. Sec of Health and Human Services*, 933 F.2d 700 ( 10th Cir 1991). Factual findings are conclusive if they are supported by substantial evidence.
Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### B. Claimant's Credibility

Credibility determinations are peculiarly the province of the finder of fact and should not be upset if supported by substantial evidence. *Kepler v. Chater* 68 F.3d 387 (10th Cir 1995) However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. *Huston v. Bowen*, 838 F.2d 1125, 1131 ( 10th Cir. 1988); *Kepler, supra*. The ALJ must set forth the specific medical and non-medical evidence relied upon in determining the Claimant's subjective complaints not credible.

In assessing complaints about pain, the ALJ must make specific evidentiary findings regarding credibility and cannot simply state that the pain is not disabling. *Luna v. Bowen*, 834

F.2d 161, 162-66 (10th Cir.1987); *Kepler*, *supra.* at 391. Under *Luna*, court must consider 1) whether the claimant has shown the existence of a pain-producing impairment by objective medical evidence; 2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and 3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's pain is disabling.  Objective evidence includes physiological and psychological evidence that can be verified by external testing.  See *Thompson v. Sullivan*, 987 F.2d 1482, 1488-89 (10th Cir. 1993). Subjective evidence comprises statements from the claimant and other witnesses that are evaluated on their credibility. *Id.* at 1489. However and ALJ need not make a formalistic factor-by -factor recitation of the evidence; so long as the ALJ sets forth the specific evidence he relies upon in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied. *Qualls v. Apfel*, 206 F3d 1368, 1372 ( 10th Cir 2000).

The Claimant complains that the ALJ has improperly rejected her testimony as false, and failed to recognize that the inconsistencies in her testimony were due to mental illness.  Although the ALJ's opinion does not appear to this Court to indict the Claimant's integrity, it does not matter for purposes of review whether the Claimant's credibility is compromised by purposeful deceit, misperception or mental illness.  The issue is whether the ALJ believed the Claimant's testimony as to the severity and extent of her physical symptoms and whether that determination as to her credibility is supported by proper analysis, sufficient articulation of the evidence considered and substantial evidence in the record.

The ALJ clearly did not find the Claimant's testimony as to the severity of her symptoms to be credible.  He utilized the correct analytical framework, applying the requirements of *Luna* and correlating the Claimant's complaints of back and hip pain to the objective evidence of injury arising from the 2003 automobile accident. He then set forth a recitation of the Claimant's

medical treatment noting that the Claimant had no regular treatment after April 2004 and that the record was devoid of documented complaints of back or neck pain after the August 2004 consultative examination.  In assessing the subjective nature of the Claimant's complaints, the ALJ reviewed both internal inconsistencies in her testimony and inconsistencies between it and the medical record.  He concluded by stating " the claimants's testimony and her statements to treating and examining physicans are marked with serious inconsistencies and contradiction such that her credibility has been significantly compromised."

The Court finds no error in the ALJ's analytical approach or sufficiency of articulation. Regardless of whether the inconsistencies in the Claimant's statements about her physical symptoms and pain were due to mental illness or dissembling, the ALJ's decision to discount her testimony is supported by the evidence in the record.

### C.  Consideration of Treating Physician Opinions

The Claimant argues that the ALJ should have adopted the June 2004 assessment by treating physician, Dr. Fromcheck, rather than rejecting it in favor of assessments by non-treating examiners made before Claimant's 2003 automobile accident. The Commissioner did not address this argument in her brief.  At oral argument, she contended that Dr. Fox's assessment was supported by the evidence in the record.

As to the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis and prognosis and any physical or mental restrictions, the ALJ must give controlling weight to the evidence and opinion of the claimant's treating physician if it is supported by clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 CFR § 404.1527(a)(2) and  § 416.927(a)(2).  To reject this

type of opinion, the ALJ must give specific, legitimate reasons and show good cause. *Frey v. Bowen* 816 F.2d 508, 513 (10th Cir 1987); *Turner v. Heckler*,754 F.2d 326, 329 (10th Cir 1985). Although, an ALJ can discount or reject a treating physician's opinion if it is conclusory and inconsistent with the objective medical evidence, *Castellano,* 26 F.3d at 1029, an ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

Here, the ALJ failed to recognize that Dr. Fromcheck was the Claimant's treating physician following her automobile accident in February 2003, when he considered Dr. Fromcheck's June, 2004 assessment of the Claimant's abilities ( Tr.283).  The ALJ stated that the assessment was prepared "by what appears to be a one-time examining source".  In light of his consideration of the entire record, including credibility determinations, the ALJ rejected both Dr. Fromcheck's June, 2004 assessment as well as the August 2004 assessment by consulting physician Dr. Fox, in favor of two assessments made before the Claimant was injured in the 2003 automobile accident. The ALJ observed that these old assessments were consistent with treatment notes by Claimant's treating neurologist, Dr. McNutt.  (Interestingly, Dr. McNutt was the consulting neurologist to whom Dr. Fromcheck's colleague referred the Claimant.)  Because Dr. Fromcheck was a treating physician, the ALJ's analytical approach and the articulation of reasons for rejecting his assessment were insufficient.  Because the error was due to the ALJ's misperception of Dr. Fromcheck's identity and relationship to the Claimant, it can be best addressed upon remand.

IT IS THEREFORE ORDERED that the determination of the Commissioner is REVERSED and REMANDED for reconsideration of Claimant's RFC and determination that flows therefrom.

Dated this 7th day of February, 2007

BY THE COURT:

Marcia S. Krieger
United States District Judge